NO. 13-16920

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CHEVRON CORPORATION,

PLAINTIFF-APPELLEE,

V.

STEVEN DONZIGER; THE LAW OFFICES OF STEVEN R. DONZIGER;
DONZIGER & ASSOCIATES, PLLC; JAVIER PIAGUAJE PAYAGUAJED;
HUGO GERARDO CAMACHO,

DEFENDANTS,

V.

JOHN DOE; JOHN RODGERS; LAURA BELANGER,

NON-PARTY MOVANTS-APPELLANTS

On Appeal From The United States District Court
For The Northern District of California
Case No. 3:12-mc-80237-CRB-NC
Honorable Nathanael M. Cousins, U.S. Magistrate Judge

**REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY**

Cindy Cohn
Nathan Cardozo
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Facsimile:  (415) 436-9993
cindy@eff.org

Marco Simons
EARTHRIGHTS INTERNATIONAL
1612 K Street, N.W., Suite 401
Washington, DC 20006
Telephone: (202) 466-5188
marco@earthrights.org

*Attorneys for Non-Party Movants-Appellants*

## I.    INTRODUCTION

In its Opposition to the Non-Party Movants' ("Movants-Appellants" or "Appellants") Emergency Motion to Stay, Chevron has deliberately and repeatedly misrepresented both the facts and the law.

Chevron's subpoena would allow it to identify of dozens of people whose speech Chevron vehemently dislikes, connect their names to that speech, and create a detailed map of their movements and associations, both personal and political, over the course of nearly a decade.

With a straight face, Chevron repeats its claim that such a request is "routine."   Opposition at 14.   Chevron is of course unable to cite any case approving a subpoena of such staggering scope, and certainly not one targeting *non-parties*, because no court has ever approved such a sweeping request.

This appeal presents a substantial constitutional issue of first impression: does a request for data tending to reveal the names, movements, and associations of dozens of non-parties over the course of nearly a decade implicate the First Amendment's rights to speech and association?   Chevron invites the Court to ignore that question, and allow production to go forward, potentially mooting Appellants' appeal.   The Court should decline Chevron's invitation and preserve the status quo pending its decision on the merits.

## II.    ARGUMENT

### A.    Chevron's Request Implicates the First Amendment Right to Anonymity and Association, Presenting a Serious Legal Question on Appeal.

Chevron's Opposition boils down to a single argument: that *none* of the non-parties it has targeted are anonymous because *some* of them used email addresses that appear to "consist of the[ir] names or initials."  *See* Opposition at 10.  As Chevron knows however, many of the email addresses belonging to the non-parties it has targeted do not include anything resembling a name or initials.  *See* Supplemental Declaration of Michelle Harrison, ECF No. 53.

Even if Chevron were correct, and it is decidedly not, that every one of the Appellants has "shed" his anonymity in one context, the law is still clear: one need not maintain perfect anonymity to enjoy the protection of the First Amendment. *See*, *e.g.*, *Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 166-69 (2002).

Finally, Chevron claims that none of the protections of the First Amendment apply here because they are not seeking to tie the Appellants' names to their statements.  They explain that instead "Chevron is seeking to confirm who used these email accounts and when to corroborate their use as part of a fraudulent RICO enterprise and to confirm locations from which that enterprise operated." Opposition at 11.  "[S]eeking to confirm who used these email addresses and

3

when" is the same thing as tying one's identity to one's statements.

**B.      Absent a Stay, Appellants Will Suffer Irreparable Harm.**

Chevron's subpoenas are squarely aimed at not just identifying, but also mapping the movements of individuals it believes are involved in political expression against Chevron.  The information Chevron seeks would allow Chevron to track the movements of dozens of people over the course of nearly a decade. And it would permit Chevron to do so without any specific tie to any conceivably relevant action by the target; they seek information regarding where a particular target was every time s/he logged on; not, for example, where the target was when s/he sent any particular email.

Allowing Chevron access to information about the Movants' identities and locations over time would reveal a wealth of details about not only about their First Amendment protected political associations – which alone is enough to warrant a stay – but also about their personal habits and day-to-day patterns, which are utterly irrelevant to the underlying litigation. *United States v. Jones*, 132 S. Ct. 945, 954 (2012) (Sotomayor, J., concurring) (continual location monitoring over a prolonged period "reflects a wealth of detail about [a person's] familial, political, professional, religious, and sexual associations.").  As the D.C. Circuit has noted, such observation of a person's movements

> reveals types of information not revealed by short-term surveillance,
> such as what a person does repeatedly, what he does not do, and what

4

he does ensemble. . . . A person who knows all of another's travels can deduce whether he is a weekly church goer, a heavy drinker, a regular at the gym, an unfaithful husband, an outpatient receiving medical treatment, an associate of particular individuals or political groups—and not just one such fact about a person, but all such facts.

*United States v. Maynard,* 615 F.3d 544, 562 (D.C. Cir. 2010), *aff'd sub nom. Jones*, 132 S. Ct. 945. The fact that Chevron's subpoena could reveal such intensely personal information that is wholly unrelated to anything Chevron could possibly need in the underlying litigation makes the subpoena radically overbroad.

Indeed, Chevron does not even dispute that these subpoenas will reveal information that is both highly personal and irrelevant. Its only argument is far broader. It claims that the Movants – and, necessarily, everyone else who sends email through an ISP – have no privacy interest in their location every time they log in because the ISPs already have this information. Opposition at 15. That is, it falls back on the Magistrate's conclusion that "There is no reasonable expectation of privacy in the routing and identifying information given to the ISPs." Order at 19. The consequences of that for every user of email are so far-reaching, and so contrary to the justified expectations of millions of email users, that it cannot be correct. But more importantly for present purposes, the proposition is so broad that it should be tested through appellate review. As a practical matter, that is only possible if a stay is granted, since, once Chevron has the information, the bell cannot be unrung.

### C.    Chevron Has Not Met Its Burden.

Once Appellants have made a "prima facie showing of *arguable* First Amendment infringement, the burden then shift[s]" to the party seeking discovery to show, not mere relevance, but a compelling need for the information. *See United States v. Citizens State Bank*, 612 F.2d 1091, (8th Cir. 1980) (emphasis added); *see also New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1355 (2d. Cir. 1989) (holding that the moving party must make a prima facie showing of some harm, but because of the "crucial place speech and associational rights occupy under our constitution," the burden is light).

What Chevron is essentially seeking here is a catalog of these non-parties' movements over a period of nearly a decade.  But Chevron never explained how, has not explained now how it has a compelling need for the Appellants' IP logs in their RICO lawsuit.  Chevron has asserted that most of the accounts at issue belong to interns or attorneys who formerly worked on the Lago Agrio litigation; surely it is unnecessary to map their movements in order to show that they worked on the Lago Agrio litigation.

But such mapping, while it is of marginal value at best to Chevron's case, is extremely intrusive to the privacy and associational rights of the account holders. While a computer user might not have a privacy interest in the IP address used in an individual log-in session, just as a person driving a car might not have a

cognizable privacy interest in his or her open movements that day, long-term mapping of movements can "reflect[] a wealth of detail about [a person's] familial, political, professional, religious, and sexual associations," *United States v. Jones*, 565 US ___, 132 S. Ct. 945, 955 (2012) (Sotomayor, J., concurring), and requires greater scrutiny. As Justice Sotomayor noted, "Awareness that the Government may be watching chills associational and expressive freedoms." *Id.* at 956. For these account holders, awareness that Chevron may be watching may be even worse. And once this information is disclosed, the intrusion cannot be undone. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")

Chevron would have the Court confuse the Appellants with the defendants in the underlying litigation. Chevron has alleged no causes of action against the Appellants and needs to prove nothing about them, their identities, their locations, or their associational habits in order to prove its case against the defendants.

As Chevron's own filings and the prior rulings of the district court demonstrate, it is inaccurate to state that the account holders were all "intimately involved in the fraud alleged in the RICO action" and that they are all "current or former agents or attorneys of the RICO action defendants." Opposition at 2.

For example, the district court acknowledged that, according to Chevron's showing, at least two of the account holders for whom the subpoena was not quashed were employees of Amazon Watch. The district court previously found, as to Amazon Watch's participation in any alleged fraud or conspiracy, that "All that Chevron has shown this Court is that Amazon Watch has been very critical of Chevron's operations in Ecuador." ECF No. 59, Case No. 13-mc-80038 CRB (NC).

Chevron's evidence regarding most of the remainder of the accounts specifically considered by the district court established only that they were interns or attorneys who formerly worked with Steven Donziger on the Lago Agrio litigation. This is a far cry from showing any involvement with fraud. The district court never explained how IP address information that would show the movements of the Lago Agrio plaintiffs' interns and attorneys would be relevant to Chevron's case.

Moreover, the district court made no findings with respect to the account holders who were not specifically represented by counsel, requiring no showing from Chevron that discovery regarding these accounts would lead to admissible evidence. Nor did the district court narrow the scope of the subpoenas with respect to these addresses to only the time periods relevant to their alleged involvement in the Lago Agrio litigation.

**D.     Chevron Has Not Demonstrated that it Will Suffer "Substantial Harm" Should the Stay Issue**

Chevron contends that the stay would "risk harm to Chevron." Opposition at 16. But Chevron misstates the standard: a "risk of harm" is not sufficient. *Nken* requires that the issuance of the stay "substantially injure" Chevron. *Nken v. Holder*, 556 U.S. 418, 426 (2009); *Lair v. Bullock*, 697 F.3d 1200, 1215 (9th Cir. 2012). And although the party seeking the stay bears the burden of justifying the need for it, the opposing party claiming "substantial harm" "is obliged to offer proof that their substantial harm outweighs the public's interest in vindicating the non-moving parties' First Amendment rights. *See Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011).

Although Chevron has claimed that it believes the information may have some marginal benefit at trial, it has not explained to this Court why it will be "substantially harmed" if it cannot use the information it seeks at trial.

Chevron's conduct with respect to the information herein sought belies any argument Chevron could make about tis importance. Despite its apparent belief that the non-party movants played some important role in the RICO conspiracy, Chevron has not named any of the non-party movants, even the ones for which it claims to know the identities, as co-defendants, or served them with any discovery directly. Nor, as non-party movants explained in their opening stay papers, did

Chevron pursue enforcement of these subpoenas with any haste until quite recently.

Chevron apparently never even asked Steven Donziger or the other defendants to confirm the identities of these account holders, despite the fact that nearly all of them were apparently identified through their emails with Donziger. Chevron could easily confirm this information through a set of simple Requests for Admission to Donziger, and if this information were truly necessary for their trial presentation, surely would have done so long before now. This is no reason to burden third parties.

### E.    Appellants' Motion Conforms with the Requirements of FRAP 8.

Appellants meet the requirements of Rule 8 of the Federal Rules of Appellate Procedure. As Chevron notes, the Rule requires that Appellants either "show that moving first in the district court would be impracticable," or "state that, a motion having been made, the district court denied the motion or failed to afford the relief requested and state any reasons given by the district court for its action." Fed. R. App. Proc. 8(a)(2)(A)(ii).

Appellants have done both. Appellants first moved for a stay from the district court, and Judge Breyer referred the motion to Magistrate Judge Cousins. ECF No. 95. Magistrate Judge Cousins denied the motion, and simultaneously granted Chevron's motion to compel, ordering Google and Yahoo! to comply by

10

5:00 p.m. Pacific time today.  ECF No. 97.  Because the local rules allow the district court 14 days to review the Magistrate Judge's order – which is nonetheless binding when issued – any further motion in the district court would be impracticable.  *See* N.D. Cal. L.R. 72-2.

Out of an abundance of caution, however, Appellants did in fact file a further motion in the district court, seeking review of Magistrate Judge Cousins' order and asking Judge Breyer to reconsider the denial of the stay.  ECF No. 98.  At this point, however, it is certainly reasonable to conclude – five hours before the compliance deadline – that the district court has "failed to afford the relief requested," although the district court has given no reasons for doing so.

## II.    CONCLUSION

For the foregoing reasons, Movants-Appellants have satisfied the requirements for a stay of the district court's order, and respectfully request that the Court enter a stay to preserve the status quo pending determination of their appeal on the merits.

Dated:  October 23, 2013          By:  /s/ Cindy Cohn__
                                  Cindy Cohn
                                  Nathan Cardozo
                                  ELECTRONIC FRONTIER FOUNDATION
                                  815 Eddy Street
                                  San Francisco, CA 94109
                                  Telephone:  (415) 436-9333
                                  Facsimile:  (415) 436-9993
                                  cindy@eff.org

Marco Simons
EARTHRIGHTS INTERNATIONAL
1612 K Street, N.W., Suite 401
Washington, DC 20006
Telephone:  (202) 466-5188
marco@earthrights.org

*Counsel for Non-Party
Movants-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 23, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  October 23, 2013                    By: _/s/ Cindy Cohn__
                                                           Cindy Cohn

                                                           *Counsel for Non-Party*
                                                           *Movants-Appellants*