No. 13-16920

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

CHEVRON CORPORATION,

PLAINTIFF-APPELLEE,

v.

STEVEN DONZIGER; THE LAW OFFICES OF STEVEN R. DONZIGER;
DONZIGER & ASSOCIATES, PLLC; JAVIER PIAGUAJE PAYAGUAJE;
HUGO GERARDO CAMACHO,

DEFENDANTS,

v.

JOHN DOE; JOHN RODGERS; LAURA BELANGER,

NON-PARTY MOVANTS-APPELLANTS

On Appeal From The United States District Court
For The Northern District of California
Case No. 3:12-mc-80237-CRB-NC
Honorable Nathanael M. Cousins, U.S. Magistrate Judge

## APPELLANTS' REPLY BRIEF

Cindy Cohn
Nathan Cardozo
ELECTRONIC FRONTIER
FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:  (415) 436-9333
Facsimile:   (415) 436-9993
cindy@eff.org

Richard Herz
Michelle Harrison
Marco Simons
EARTHRIGHTS INTERNATIONAL
1612 K Street, N.W., Suite 401
Washington, DC 20006
Telephone:  (202) 466-5188
marco@earthrights.org

*Counsel for Non-Party Movants-Appellants*

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT ....................1

II.   STATEMENT OF THE CASE ...................................................3

    A.    THE TRIAL RECORD IS CLOSED. ............................................3

    B.    RESPONSE TO CHEVRON'S STATEMENT OF THE CASE...........................4

III.  ARGUMENT ....................................................................9

    A.    DISCOVERY IS NOT WARRANTED BECAUSE THE TRIAL IS OVER...........9

    B.    CHEVRON'S SUBPOENAS SHOULD HAVE BEEN QUASHED BECAUSE THEY SEEK IRRELEVANT INFORMATION AND ARE OVERBROAD. .........10

        1.    The Subpoenas Seek Irrelevant Information. ...........................10

        2.    The Subpoenas Are Overbroad..................................14

        3.    Chevron's Subpoenas Are Extraordinary ................................16

        4.    If the Subpoenas Are Not Quashed, They Should Be Limited to Exclude Irrelevant Information. ..........................................18

        5.    These Overbroad Subpoenas Should Not Be Enforced Against Anyone. ......................................................18

    C.    CHEVRON'S SUBPOENAS IMPERMISSIBLY BURDEN APPELLANTS' FIRST AMENDMENT RIGHTS. ................................................19

        1.    Chevron's Subpoenas Violate Appellants' First Amendment Right to Anonymity.................................................19

        2.    Chevron's Subpoenas Violate the First Amendment Right of Association. ..........................................................24

    D.    CHEVRON'S SUBPOENAS VIOLATE THE CALIFORNIA CONSTITUTION. ..26

E.    APPELLANTS HAVE STANDING TO REPRESENT THE INTERESTS OF THOSE NON-PARTIES TARGETED BY CHEVRON WHO LACK THE WHEREWITHAL TO SECURE COUNSEL. .................................................28

IV.  CONCLUSION .................................................................................30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AF Holdings LLC v. Doe,*
    No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS 75806
    (N.D. Cal. May 31, 2012) ............................................................ 17

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010)................................................. 17, 23

*Arizona Right to Life Political Action Comm. v. Bayless,*
    320 F.3d 1002 (9th Cir. 2003)..................................................... 29

*Campbell v. Louisiana,*
    523 U.S. 392 (1998) .................................................................... 29

*Chevron Corp. v. Donziger,*
    No. 13-mc-80038-CRB, 2013 WL 1402727 (N.D. Cal. Apr. 5, 2013).... 5, 23

*Chevron v. Donziger,*
    No. 11-cv-0691 LAK (JCF) (S.D.N.Y. Feb. 1, 2011)................................ 3, 4

*Chevron v. Donziger,*
    No. 12-mc-00065 LAK (CFH) (N.D.N.Y. Dec. 9, 2013) ......................... 4, 9

*Coalition of Clergy, Lawyers & Professors v. Bush,*
    310 F.3d 1153 (9th Cir. 2002)..................................................... 28

*Convertino v. Dep't of Justice,*
    684 F.3d 93 (D.C. Cir. 2012) ................................................. 9, 10

*Doe v. 2TheMart.com,*
    140 F. Supp. 2d 1088 (W.D. Wash. 2001) ............................... 23, 24

*Dombrowski v. Pfister,*
    380 U.S. 479 (1965) .................................................................... 29

*In re Apollo Grp., Inc. Sec. Litig.,*
    329 Fed. Appx. 283 (D.C. Cir. 2009)............................................ 9

*In re Mercury Interactive Corp. Securities Litigation*,
    618 F.3d 988 (9th Cir. 2010) ........................................................... 4

*In re Roebers*,
    No. 12-mc-80145-RS (LB) 2012 WL 2862122 (N.D. Cal. July 11, 2012) . 17

*John Wiley & Sons, Inc. v. Does 1-30*,
    284 F.R.D. 185 (S.D.N.Y. 2012) ................................................... 17

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ..................................................................... 28

*London v. Does 1-4*,
    279 F. Appx. 513 (9th Cir. 2008) ................................................ 17

*Mattel Inc. v. Walking Mt. Productions*,
    353 F.3d 792 (9th Cir. 2003) ....................................................... 14

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334 (1995) ..................................................................... 20

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ......................................................... 7, 21, 22, 23

*Sony Music Entertainment Inc. v. Does 1–40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004) ........................................ 23

*United States v. Blechman*,
    657 F.3d 1052 (10th Cir. 2011) ................................................... 14

*United States v. Bortnovsky*,
    879 F.2d 30 (2d Cir. 1989) .......................................................... 14

*United States v. Jones*,
    132 S. Ct. 945 (2012) ................................................................... 27

*United States v. Maynard*,
    615 F.3d 544 (D.C. Cir. 2010),
    *aff'd sub nom. Jones*, 132 S. Ct. 945 (2012) ............................... 16

*Watchtower Bible & Tract Soc. of N.Y., Inc. v. Village of Stratton*,
    536 U.S. 150 (2002) ..................................................................... 20

*Xcentric Ventures, LLC v. Karsen, Ltd.*,
    No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888
    (D. Ariz. Aug. 28, 2012) ............................................................ 17

## STATE CASES

*People v. Stipo*,
    124 Cal. Rptr. 3d 688 (Cal. Ct. App. 2011) ............................... 27

*Planned Parenthood Golden Gate v. Superior Court*,
    99 Cal. Rptr. 2d 627 (Cal. Ct. App. 2000) ................................. 27

## FEDERAL RULES

Fed. R. Civ. P. 26 ................................................................................ 18

Fed. R. Civ. P. 45 ...................................................................... 9, 15, 18

Fed. R. Evid. 803 ................................................................................ 14

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. I ...................................................................... *passim*

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

Chevron continues to pursue these two subpoenas seeking information about the non-party owners of 39 email accounts even after its trial against the actual defendants has ended, post-trial briefs filed, and the record "irrevocably" closed.[1] The subpoenas seek the identities of these non-parties and to map every location where they checked their email over 8 years. The subpoenas are overbroad since they reveal locations where these individuals logged in for any purpose, including logins that have no relationship at all to any claims in the case. Nor is the information sought relevant to the now-complete trial: as Chevron itself points out, login location information alone does not reveal anything about the content of emails sent or received during a particular session. Indeed, with the close of the underlying trial record, it's plain that Chevron has no need to "confirm" any identities through these subpoenas or for any of the other information it seeks.

Chevron had a duty to issue subpoenas within the limits of the Federal Rules of Civil Procedure. These subpoenas extend well beyond those generous limits. The district court, while recognizing some of the overbreadth as to many of the email accounts that managed to secure counsel, erred in failing to quash them in their entirety.

---

[1] From the beginning of this litigation, Appellants have raised arguments about only non-parties. Chevron has not alleged that any of these 39 accounts are held by parties.

1

Chevron's subpoenas also run afoul of Appellants' First Amendment free speech and associational rights, since they seek information that will reveal Appellants' identities as well as their political, social and intimate associations over the course of nearly a decade. Discovery of such sensitive information requires a showing that meets a high standard under long-settled constitutional doctrines protecting anonymity and association, but all Chevron can muster in support of its argument here is a claim that *others* have committed a fraud against it. That is insufficient.

Similarly, the subpoenas are invalid under the California Constitution's even more stringent right to privacy. Chevron's claim—that all privacy rights in information held by third parties may be waived by basic terms of service that simply recite that the company will comply with lawful process—is not only unfounded, but if accepted by this Court, would dramatically reduce the privacy rights of millions of individuals with California-based email providers.

Finally, well-settled third-party standing doctrine allows Appellants to stand for those hindered from appearing here. The individuals targeted all have a common interest since the information sought about each is the same and sought for the same purpose of demonstrating their joint involvement in an alleged fraud. Chevron should not be afforded a windfall of information to which it is not entitled simply because the targets lacked the ability to defend themselves.

2

Chevron's continued efforts to enforce these subpoenas to gather information that is irrelevant to its case, for a trial that is now over, reveal its true intent: to intimidate, harass, and discourage these non-parties, or anyone else, from opposing Chevron in the political debate surrounding the environmental harms of Chevron's oil extraction. Chevron's abusive discovery tactics should not be endorsed by this Court.

## II.     STATEMENT OF THE CASE

### A.     The Trial Record is Closed.

On November 26, 2013, the trial proceedings to which this subpoena relates formally concluded. Judge Kaplan stated that "[t]he record is now at this moment, subject to getting [the deposition designation list], closed." *Chevron v. Donziger*, No. 11 civ. 0691 ("SDNY Action"), Trial Transcript, at 2963:12-13, 2931:20-21, 2963:16-17 ("That ship has sailed irrevocably whether anybody is on it or not.") (Nov. 26, 2013). The record remained open only as to one particular set of newly-discovered documents ordered to be produced by a witness, Donald Moncayo *(see id.* at 2962:3-18; *id.* at 2963:13-15; and 2962:13-14); *see also* SDNY Action ECF 1829 at 3 (Dec. 13, 2013). It is those documents to which Chevron refers when it notes that it has supplemented the record post-trial. Ninth Cir. ECF 20-1 at 31 ("Chevron Br.").

Chevron also references Judge Kaplan's suggestion that he *might* entertain a motion to supplement the record with discovery from Microsoft similar to that at issue here. *Id*. at 31 (citing *Chevron v. Donziger*, No. 12-mc-00065 LAK (CFH), ECF 69 at 2 (N.D.N.Y. Dec. 9, 2013)). Yet later, in granting the unopposed motion to supplement the record with the Moncayo documents, Judge Kaplan stated his ruling "disposes of all outstanding matters relating to the content of the trial record." SDNY Action, ECF 1841 (Dec. 17, 2013).

### B.    Response to Chevron's Statement of the Case.

Chevron's statement of the case primarily describes the alleged conduct of the defendants. As to the non-parties whose information is at issue here, Chevron argues only that they were "intimately involved in the [defendants'] fraud[,]" in obtaining the Ecuadorian judgment. Chevron Br. at 14, 29.[2] Yet, at most, Chevron's supposed evidence suggests only that the Appellants were vocal critics of Chevron's actions in Ecuador, and assisted in bringing public attention to the cause.

---

[2] Chevron now makes a bald claim that the non-party Appellants were "agents" of defendants. Chevron Br. at 33. Not only is that claim completely unsubstantiated, it is barred because Chevron raises it for the first time on appeal. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 992 (9th Cir. 2010) ("We apply a general rule against entertaining arguments on appeal that were not presented or developed before the district court.") (citations omitted).

The scope of that alleged fraud is settled. The trial court limited production of discovery in the underlying case to five instances in which Chevron had established probable cause to believe defendants committed fraud in obtaining the Ecuadorian judgment. *See* Appellants' Opening Brief, ECF 12-1 ("AOB") 17-18. Chevron does not, and cannot, show that any of the appellants were involved in any of these five alleged instances. While Chevron now claims that it was not so limited in discovery, Chevron Br. at 56-57, it did not dispute the district court's finding to that effect below. *See* N.D. Cal. ECF 74 (Chevron's Motion for Relief from Non-Dispositive Pretrial Order of Magistrate Judge, filed Sep. 5, 2013).

As to the majority of the non-parties, Chevron merely alleges that they were involved in a "public pressure campaign" against Chevron or involved with Amazon Watch, an entity Chevron unsuccessfully tried to pull into discovery in the Northern District of California through a subpoena that was quashed on First Amendment and overbreadth grounds. AOB 19-20, n.6; Chevron Br. at 14-15. As the Northern District Court found, "none of those five instances" identified by the trial court "had anything to do with the alleged pressure campaign or Amazon Watch." *Chevron Corp. v. Donziger*, No. 13-mc-80038-CRB, 2013 WL 1402727 at *4 (N.D. Cal. Apr. 5, 2013).

Specifically, as to each of the Appellant Does, Chevron's claims are:

• Doe 3, the owner of tegelsimeon@gmail.com "publicized and distributed" and wrote allegedly "false letters to news entities" about a report by an Ecuadorian expert, Cabrera, who Chevron claims was not independent. Chevron Br. at 15. But Chevron does not allege that the owner of tegelsimeon@gmail.com was involved in creating the allegedly fraudulent report. Indeed, all it cites are emails about two letters to the editor calling public attention to harms caused by Chevron's operations, SER 218-19, 210-17, both of which were written before the Cabrera report had been questioned, and none of which have any bearing on Chevron's claim that the judgment in Ecuador was fraudulently procured.

• Doe 4, the owner of kevinkoenigquito@gmail.com, worked with the defendants in Ecuador and "with Donziger on pressure campaigns involving New York City and State officials." Chevron Br. at 15. This claim rests on two emails. One is a press release that does not mention Chevron or the Ecuador litigation, SER 207-9, and the other discusses the possibility of meeting with Chevron shareholders in New York. SER 205-206.[3]

---

[3] Chevron claims that the pressure campaign relates to the Ecuador litigation. Chevron Br. at 16 (claiming that Doe 4 was "misleading" when he said he had no

- Doe 1, owner of the account cortelyou@gmail.com, allegedly "knew" that Donziger's "strategy involved pressuring Chevron through negative publicity[,]" and "he supported this strategy." Chevron Br. at 14. The "evidence" Chevron cites consists of two emails from Donziger to multiple recipients discussing the need for someone to research publicly available information about Chevron *unrelated to the Ecuador litigation*. SER 222-23, SER 220-21.

- Doe 2, the owner of firger@gmail.com, interned for Donziger and was "asked" to "help determine in which countries Chevron would be 'vulnerable to pressure[.]'" Chevron Br. at 14. Chevron relies on the same two emails regard to Does 1 and 2.

- Doe 6, the owner of erikmoe66@yahoo.com, briefly assisted with the effort to find funding for the litigation. The trial court did not identify fundraising for the litigation as relevant to the alleged fraudulent conduct. Notably, Chevron does not demonstrate that Doe 6 had any knowledge of

---

direct connection to the litigation, because he "in fact coordinated a pressure campaign against Chevron with Donziger"). But as noted above, the "pressure campaign" has been rejected as one of the five instances found by the New York trial court. AOB 17-18. Indeed, were it to be included, Chevron's underlying lawsuit itself would raise serious First Amendment concerns. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 910 (1982) ("[s]peech does not lose its protected character . . . simply because it may . . . coerce [others] into action."). In any event, a single email about a potential meeting with shareholders in New York hardly demonstrates "intimate" involvement in the Ecuador litigation.

or connection to any of the relevant areas identified by the trial court nor does the evidence show that Doe 6 had anything to do with what actually happened in Ecuador. *See* AOB at 19.

• As to Doe 7, the owner of richardclapp@gmail.com, Chevron failed to put forth any argument *whatsoever* as to how the information sought here through this subpoena – "confirmation" of the account owner's identity and the locations from which he logged into his email account – is in any way relevant to the alleged fraud or the underlying litigation. *See* AOB at 22-23. Chevron's claim that he has abandoned his anonymity (Chevron Br. at 17) does not bear on whether the discovery was justified.

Chevron's opposition confirms that the subpoenas target the Does for their "pressure campaign" – that is, for their speech. Chevron Br. at 15-16.

Moreover, Chevron's opposition fails to address the lack of any logical connection between the information it seeks and what it says it needs it for. There is no dispute that login IP addresses provide only the location of the user at the time he or she signed on to her email account. Even Chevron agrees that login IPs cannot demonstrate whether any particular documents (or other content) was shared, modified, or even accessed during any particular email session, much less indicate with whom any particular document was shared during a session. *Id.* at 12, 33, 36. Thus, as a factual matter, the information Chevron seeks simply cannot

reveal either whether any accountholders had access to the defendants' internal documents and data or prove whether certain predicate acts took place in the United States, the two things Chevron says it wishes to use the information to prove, since both require a connection to specific content – a connection Chevron *specifically denies seeking. Id.* at 33, 36.

## III.   ARGUMENT

### A.   Discovery Is Not Warranted Because the Trial Is Over.

Chevron's justification for these subpoenas was for trial, but the trial ended over a month ago, and Judge Kaplan has announced that the record is "irrevocably" closed "in all respects." *Supra* Section II.A. Ordinarily, and for good reason, the end of the trial for which a Rule 45 subpoena was issued voids that subpoena. *See e.g., In re Apollo Grp., Inc. Sec. Litig.,* 329 Fed. Appx. 283, 284 (D.C. Cir. 2009); *Convertino v. Dep't of Justice,* 684 F.3d 93, 101 (D.C. Cir. 2012).

Somewhat puzzlingly, given his repeated statements that the record is closed, Judge Kaplan did suggest he *might* entertain a motion to supplement the record with similar discovery sought from Microsoft. Chevron Br. at 31 (citing *Chevron Corp. v. Donziger*, No. 12-mc-00065 LAK (CFH), ECF 69 at 2 (N.D.N.Y. Dec. 9, 2013)). But he subsequently confirmed that there are no "outstanding matters relating to the content of the trial record." SDNY Action,

9

ECF 1841 (Dec. 17, 2013). Regardless, at least for the Northern District of California subpoenas, which are to different entities and seek information about different email addresses, there is no basis for altering the basic rule that the absence of a pending trial in the Southern District of New York *voids* the Northern District of California subpoenas. *Convertino*, 684 F.3d at 101 (holding that the end of a trial voids outstanding subpoenas despite the prospect of further motions).

Nor should the Court fashion some exception to the rule that these subpoenas are void, not least because Chevron has not "diligently pursued" the requested materials. Chevron Br. at 31. Chevron did not move to compel production until more than a year after it served the subpoenas, more than four months after the May 31, 2013 discovery cutoff and just days before the start of its trial. *See* SDNY Action, ECF 494.

**B.    Chevron's Subpoenas Should Have Been Quashed Because They Seek Irrelevant Information and Are Overbroad.**

While, as this Court recognized, these subpoenas raise "substantial" constitutional concerns, *see* Oct. 25, 2013 Order, the Court need not reach those questions, because the subpoenas are overbroad and do not seek relevant evidence.

**1.    The Subpoenas Seek Irrelevant Information.**

Chevron's claim to nearly a decade's worth of location mapping information about the non-party Appellants rests on the bald assertion that every one of them was "intimately involved," Chevron Br. at 29, and "provided significant assistance

10

to the [defendants'] fraudulent enterprise," *id.* at 37, and on a new claim on appeal, that they were the "agents" of defendants, *id*. at 33.[4] That is nonsense.

Chevron claims merely that Doe 1 "knew" and "supported" a strategy of drawing "negative publicity" to Chevron. *Id.* at 14. Doe 2 helped figure out where Chevron was "vulnerable to pressure." *Id*. Doe 3 "publicized and distributed" information, while Doe 4 worked on "pressure campaigns" with state and local officials. *Id.* at 15. As noted below, all of this is ordinary issue campaigning that is protected by the First Amendment.

More importantly, none of the information Chevron seeks will support its fraud theory. Chevron asserts that the "defendants and their affiliates established email accounts to store and exchange documents in furtherance of the fraud." *Id.* at 29. But Chevron has not accused these specific non-parties of having participated in any sharing, or provided any evidence of it; let alone presented any evidence that drafts of the Ecuadorian judgment had been emailed or shared by them. *Id.*

Nor would this subpoena yield any evidence useful to Chevron, since the identity information and login information it seeks simply could not indicate whether the non-parties' accounts assisted the defendants in sharing any documents. *Id*. at 29-30. As noted above, login IP addresses only provide the

---

[4] *See supra* note 2.

location of the user at the time he or she signed on to her email account and cannot indicate what was done with any particular documents or other content during a session.

Indeed, Appellants have already expressly demonstrated that the login IP addresses associated with the account richardclapp@gmail.com, which Chevron has already obtained, are irrelevant to Chevron's claims. AOB at 22-23. Chevron's complete failure to respond to this in its brief is telling: if the location information Chevron already has is somehow relevant to Chevron's case, it presumably would have explained what the relevance is.

Equally unavailing is Chevron's claim that it needs this discovery to demonstrate that RICO predicate acts occurred in the United States. Chevron Br. at 30. Of course, Chevron presented no evidence of the non-parties' participation in the alleged predicate acts. *Id.* Even if it had, the login information would not reveal what a particular target was doing when he logged on, and thus could not help Chevron establish that a target was in a particular place *when he committed a predicate act.* And the breadth of Chevron's requests belies their stated purpose: Chevron could have focused the subpoena on the time periods of specific acts, yet chose not to do so. *See* AOB at 21. Chevron claims that it "narrowed [the subpoenas] to [seek] information only from relevant time periods", which it erroneously defines as periods of *years* in which a target had anything to do with

Chevron. *See* Chevron Br. at 22; ER32-33. But even that claim is false; at most, it offered to consider narrowing the subpoenas' timeframes if the Does would *forfeit* their anonymity claims.

Chevron also asserts, without support, that identifying information (but not the IP logs) would assist it in determining the structure and management of the alleged fraud. Chevron Br. at 30. That is pretext, because on the very same page, Chevron asserts that it "likely knows the accountholders' identities" (*id.*) and confidently asserts what it believes are the identities and activities of each. But Chevron provides no evidence that its targets actually participated in any fraud. *Id.* And it does not say how "confirming" the identity information of the non-actors in the fraud that it already claims to know would help it determine the structure of the alleged enterprise.

Last, Chevron claims that the identity information will "substantiate the identities of the accountholders in a form usable at trial." *Id.* at 12. But it provides no argument, much less evidence, that it needed that information at the now-closed trial, nor evidence that it sought such information from more readily available sources – such as a simple Request for Admission to the defendants.

Nor is the information it seeks here admissible. Subscriber information given by users to Google and Yahoo at the time of account registration is inadmissible hearsay for the truth of the actual identities of the users. While the record of

13

subscriber information maintained by the service provider could fall within the business record exception (*see* Fed. R. Evid. 803(6)), any statements by the *non-party* Appellants, even if contained within the provider's business records, are hearsay within hearsay for which no exception exists. *See United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989) (statement of a third-party contained within otherwise admissible insurance report properly excluded where third-party was under no business duty to report); *United States v. Blechman*, 657 F.3d 1052, 1065-66 (10th Cir. 2011) (information concerning identity of third-party over Internet was not admissible under business records exception to hearsay rule). This is obvious simply by looking at the account information that has already been produced, in which, for example, one owner listed their "Full Name," as something that is not a name at all. *See* SDNY Action Trial Exhibit PX2561 at 9.

Because Chevron cannot establish any basis to believe that the users submitted accurate information, the identifying information is inadmissible.

### 2.    The Subpoenas Are Overbroad.

The subpoenas also must be quashed because they are grossly overbroad. AOB at 16-25. *See Mattel Inc. v. Walking Mt. Productions*, 353 F.3d 792, 813 (9th Cir. 2003) (upholding the quashing of a subpoena that was "too broad for the explanation given").

By demanding eight years of detailed email usage information, Chevron seeks a detailed catalog of the account holders' daily movements. There is no possible argument that all of that information is relevant. If some portion of it were, it would only be that portion relating to specific times or locations related to specific emails or documents – like the Cabrera report or the allegedly fraudulent judgment – not the entirety of the users' login IPs. Chevron's only response, that it was somehow *Appellants*' responsibility to provide sworn testimony as to the time periods that they "worked with the [defendants]" and thereby seek to limit the subpoenas' scope, Chevron Br. at 13, 57, turns Rule 45 on its head. No authority supports Chevron's claim that it is a non-party subpoena target's responsibility to assist in narrowing a litigant's facially overbroad subpoena, especially when such "assistance" would result in the forfeiture of that non-party's right to anonymity.

Regardless, Chevron's argument misses the point. Its subpoenas are overbroad not just because they extend beyond time periods in which the targets had anything to do with Chevron or Ecuador, but also because, within those time periods, they seek information that has nothing to do with such activities. The information Chevron seeks will not differentiate between where a Doe was when he worked on the Ecuador campaign and where he was when he emailed birthday wishes to his cousin, or asked his mom for a recipe, or did any of the innumerable other things that people do by email every day. Instead, the discovery Chevron

15

seeks will indiscriminately provide the Does' location for all of their various personal and professional activities whether or not they had anything to do with Chevron or Ecuador. ER125-26.

And this is made even worse by the fact that, contrary to Chevron's repeated assertion that the requested information will tend to reveal only general locations, the unrebutted evidence is that the IP logs will show much more, indeed in some cases, down to the very buildings Appellants frequented. *See* ER125-26. Indeed, this information will allow Chevron to create what the D.C. Circuit, addressing a GPS device, called an "intimate picture" of the subjects' daily travels to and from work, their favored haunts, their associations, and activities, stretching far beyond anything even conceivably relevant. *See e.g. United States v. Maynard*, 615 F.3d 544, 563 (D.C. Cir. 2010), *aff'd sub nom. Jones*, 132 S. Ct. 945 (thirty days of location information).

The subpoenas thus demand far more information than Chevron could possibly need to support its claims, without any targeting of specific alleged acts of fraud, even though Chevron had the capacity to do so. AOB at 17. They are fatally overbroad.

### 3.    Chevron's Subpoenas Are Extraordinary

Chevron's claim that courts "routinely" uphold subpoenas like these (Chevron Br. 32-33) is simply untrue. Most importantly, every case it cites

concerns information about *parties* to a case; indeed, to counsel's knowledge, no court (other than Judge Kaplan) has approved a subpoena of this scope targeting non-parties.

Many of the authorities Chevron cites involve plaintiffs seeking identity information to facilitate service of process. *John Wiley & Sons, Inc. v. Does 1-30*, 284 F.R.D. 185, 190 (S.D.N.Y. 2012); *see also, AF Holdings LLC v. Doe,* No. 12-cv-02416-WHA, 2012 U.S. Dist. LEXIS 75806, at *2-3 (N.D. Cal. May 31, 2012) (seeking identity of defendant in copyright infringement case); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 113, 124 (2d Cir. 2010) (same).

Chevron's other cases are equally inapposite. *In re Roebers*, No. 12-mc-80145-RS (LB) 2012 WL 2862122, at *3 (N.D. Cal. July 11, 2012), concerned divorce proceedings where the wife sought information about *her own accounts*. *London v. Does 1-4*, 279 F. Appx. 513, 514-15 (9th Cir. 2008), concerned divorce proceedings where the wife sought account information to confirm that her husband had been using the accounts to solicit sex online. Finally, *Xcentric Ventures, LLC v. Karsen, Ltd.,* No. 11-cv-01055-PHX-FJM, 2012 U.S. Dist. LEXIS 121888, at *1-3 (D. Ariz. Aug. 28, 2012), concerned whether a protective order should issue. None of these cases addressed subpoenas aimed at mapping the movements of non-parties.

### 4.     If the Subpoenas Are Not Quashed, They Should Be Limited to Exclude Irrelevant Information.

While overbreadth justifies quashing the subpoenas in their entirety, if this Court disagrees, it should remand to the lower court to limit any disclosure to the IP information associated with specific dates or locations. Indeed, the district court recognized that, with respect to the participating Does, both the end date and the start date of the subpoenas could "be more closely tailored to defendants' alleged actions, for example, starting with the filing of a particular environmental report or the launch of a public relations campaign." ER32-33.

### 5.     These Overbroad Subpoenas Should Not Be Enforced Against Anyone.

Chevron's standing argument, under which it tries to limit the reach of this appeal to only those Does who have appeared, is irrelevant to overbreadth, since, as the district court recognized, federal courts have an independent obligation to ensure that all of the discovery sought is relevant, including as to the unrepresented non-parties. Fed. R. Civ. P. 26(b)(2)(C) (where the burden of discovery exceeds the benefit, the court "on its own . . . must limit" discovery); Fed. R. Civ. P. 45(d)(1) (court "must enforce" party's duty to avoid imposing undue burden). AOB at 23-24, ER31. The district court abused its discretion in ordering Chevron's subpoenas enforced with respect to the non-movants' addresses without even considering whether the information was discoverable.

18

As noted above, there is no possibility that eight years of IP logs for each of the 33 unrepresented non-parties is relevant. Chevron should not be unjustly rewarded for issuing overbroad subpoenas simply because the third-parties targeted cannot muster counsel to respond. Given that the Federal Rules expressly contemplate that courts cannot enforce overbroad subpoenas, this Court should not enforce Chevron's subpoenas here as to any target.

**C.    Chevron's Subpoenas Impermissibly Burden Appellants' First Amendment Rights.**

**1.    Chevron's Subpoenas Violate Appellants' First Amendment Right to Anonymity.**

Chevron argues that the First Amendment's protections for anonymous speech and association do not apply because the expressive activities here are not truly anonymous and that, in any event, Chevron's "need" for the information trumps those interests. Chevron is incorrect on both counts.

Chevron does not disagree that, under Supreme Court precedent, the appearance of absolute secrecy of a speaker's identity is not necessary for First Amendment protections to apply. *See* Chevron Br. at 35; AOB at 32-33. Instead, Chevron argues, somewhat confusingly, that Appellants "have not maintained secrecy regarding their identities—in 'appearance' or in fact." Chevron Br. at 35-36. Chevron is wrong, both as a matter of fact and as a matter of law.

19

As the Supreme Court noted, "the decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995). In both *McIntyre* and *Watchtower Bible & Tract Soc. of N.Y., Inc. v. Village of Stratton*, 536 U.S. 150 (2002), the Supreme Court protected the right of anonymity of people whose identity was obviously not secret. AOB at 32-33. The Does here were no more (and probably less) publicly identifiable than those individuals. Whether they have been successful in withholding that information from Chevron, or done so in other contexts, is irrelevant.

Moreover, the list of unrepresented accounts contains nearly as many addresses that *do not* even appear to contain names or initials as those that do. ER44. And in any case, Chevron has made not even the barest showing that any of the unrepresented account holders has somehow "waived" their anonymity, or even that Chevron actually knows who they are.

Chevron also suggests that the ability of a third party to find through an Internet search or another website what it believes to be evidence tying a particular person to an email address undermines the First Amendment interest of the speaker. Chevron Br. at 17. Not so. The cleverness, or lack thereof, of a legal

adversary to discover the identity of an anonymous speaker is not relevant to whether "the Does chose *not* 'to remain anonymous.'" *Id.* at 34-35.

Chevron argues that Appellants should be unmasked because they "provided significant assistance to the [defendants'] fraudulent enterprise." Chevron Br. at 37. But as noted above, there is no evidence that Appellants themselves committed fraud or were members of the alleged conspiracy. *See supra* Section II.B. The most Chevron alleges is that they were part of a "pressure campaign," which is protected under the First Amendment.

The Supreme Court has foreclosed on Chevron's effort to brand its targets as co-conspirators based on their exercise of their First Amendment rights. *Claiborne Hardware*, 458 U.S. at 886. In *Claiborne Hardware*, the Court addressed another "pressure campaign," a boycott designed to promote racial equality that was enforced in part through violence, but that also included speeches, peaceful protests and the voluntary choice of many local residents not to use certain stores. *Id.* at 888-89, 903-4. The Court held that the non-violent elements of the campaign were protected by the First Amendment; individuals' First Amendment rights are not limited—and they could not be held liable—simply because their partners in expressive activity violated the law in furtherance of their joint campaign. *Id.* at 908, 915, 919-20, 934. First Amendment rights will be denied only to those who themselves had "a specific intent to further an unlawful aim." *Id.* at 925; *accord id.*

21

at 920, 933. Without evidence of specific criminal intent—"judged according to the strictest law"—the exercise of First Amendment rights of association are not criminal and remain protected. *Id.* at 919 (internal quotation omitted). Speech itself cannot be evidence of illegality. *See id.* at 932-34. And Chevron's burden to show illegal intent is "heavy." *Id*. at 934. The district court was under "a special obligation" to examine Chevron's allegations "critically" and with "extreme care." *Id.* at 915, 927.

Therefore, to show that advocacy speech is not protected, Chevron must prove not only that the speech itself was part of some fraud, but also that the speaker had a specific intent to further that fraud. *Id*. at 919. Chevron does not even attempt to meet its burden for the Appellants, much less for the other non-parties, nor did the district court find that it had.

As in *Claiborne Hardware*, Chevron's argument that the First Amendment does not protect movants because their speech furthered a conspiracy (Chevron Br. at 37-38) requires that Chevron prove that the public speech involved was illegal. But Chevron cannot have it both ways. It cannot argue that its broad subpoena is justified and that the targets can be stripped of constitutional rights because they allegedly were conspirators, and then spin on its heel and argue that it need not meet the strict standards of *Claiborne Hardware*, which carefully circumscribe

who can be deemed a conspirator and the circumstances in which expressive activity can be defined as illegal.

Thus, when Chevron made this exact argument in defending its Amazon Watch subpoenas, that court correctly held that *Claiborne Hardware* applies. *Chevron*, 2013 WL 1402727 at \*4.[5] Indeed, "Chevron's counsel admitted that there are no cases in which courts have found that running a pressure campaign brings speech outside the protection of the First Amendment and entitles a party to discovery." *Id*. Not surprisingly, Chevron has not provided any such cases here.

Chevron's reliance on *Sony Music Entertainment Inc. v. Does 1–40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) and *Arista Records*, 604 F.3d 110, is also misplaced because, as noted above, those cases sought the identities of anonymous *party defendants* directly accused of violating the law in order to effectuate service of process on them so that the case could proceed. Where discovery is directed at non-parties like Appellants, the appropriate standard is instead that articulated in *Doe v. 2TheMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001); AOB at 27-31. Regardless of which test is more stringent, the *2TheMart* court addressed, as neither the *Sony* nor *Arista Records* courts were asked to do, the additional and

---

[5] After unsuccessfully pursuing "egregiously overbroad" subpoenas from Amazon Watch, *Chevron,* 2013 WL 1402727 at \*3-7, Chevron now seeks through these subpoenas another bite at the apple by expressly demanding information from account holders it believes work for Amazon Watch. Chevron Br. at 15.

necessary discovery protections warranted for non-parties to prevent harassment, overburdening, and abuse. As the *2TheMart* court noted:

> The standard for disclosing the identity of a non-party witness must be higher . . . When the anonymous Internet user is not a party to the case, the litigation can go forward without the disclosure of their identity. Therefore, non-party disclosure is only appropriate in the exceptional case where the compelling need for the discovery sought outweighs the First Amendment rights of the anonymous speaker.

*2TheMart.com*, 140 F. Supp. 2d at 1095.

No such exceptional circumstances exist here. As noted above, the subpoenas are massively overbroad and Chevron has failed to demonstrate any legitimate need, much less a compelling need, for the information. These and other failures—such as Chevron's failure to exhaust other obvious avenues to obtain the information it argues it is entitled to here—renders the subpoenas unenforceable under the First Amendment. *See* AOB at 27-31.

## 2. Chevron's Subpoenas Violate the First Amendment Right of Association.

The Does presented unrebutted evidence of harm due to Chevron's subpoenas. As to Doe 4, for example, the District Court specifically noted, "The court takes seriously, however, the declarant's fears and concerns." ER36-37. Doe 4 described how his personal safety and that of his family would be put at risk and how, on several other occasions, other information that Chevron had obtained through discovery had "somehow" become public. ER105-06.

Similarly, Doe 3 noted that revelation of his private email usage could harm his ongoing work as a journalist working with confidential sources in Latin America. ER110. Doe 1, like many of the Does, declared that turning over the subpoenaed information "would intimidate me and deter me from engaging in activism or litigation against Chevron in the future." ER116. He also noted that he had already turned down a job offer after seeing "what Chevron had put others through." *Id*. Doe 3 said that "disclosing information linked to my whereabouts would create significant anxiety for me." ER110. Doe 6 described a "feeling of insecurity fearing that my movements and activities could by tracked by Chevron" and a "fear of retribution from Chevron." ER100. Other non-parties made similar record statements attesting to feeling harassed and intimidated, all of which are unrebutted. It is also objectively reasonable that the declarants feel chilled and intimidated by a political opponent's efforts to link their identities to every location where they have checked their email since 2003. These declarations easily meet the "light" standard for demonstrating a prima facie case of harm. AOB at 39-40.

Instead of providing counter evidence, Chevron just repeatedly asserts that the Does claims are "baseless." Chevron Br. at 49. This is insufficient to defeat the prima facie showing that Appellants have made and which was recognized by the district court below. *See* ER36.

25

Chevron also argues that the right of association cannot be violated because "the Does disclosed their associations with the [defendants]." Chevron Br. at 35. But the associations sought here, and which Appellants seek to protect, go far beyond just possible associations with the defendants – anyone who can be connected to or identified by the same IP address as the Does, from family members to friends to professional contacts, will be identifiable as an associate by the data sought. Appellants' personal and political associations, *entirely apart from the Ecuador campaign*, will be revealed by the data Chevron seeks. ER125-26.

### D.    Chevron's Subpoenas Violate the California Constitution.

No California court has approved a subpoena as invasive of privacy rights of non-parties as those at issue here. And while this is a matter of first impression in California, Chevron cannot refute Appellants' showing that its subpoenas violate the California Constitution's guarantee to privacy. AOB at 52-55. Chevron's argument boils down to the claim that because this discovery is directed at information held by third party service providers, and those providers have terms of use that say that they will comply with lawful process, Appellants have waived entirely their right to privacy. Chevron Br. at 52-54. If Chevron's broad brush argument is correct, no email user could *ever* have a right to privacy in, not only his name, home address and other contact information he provided to the ISP, but

also in the time, date and location of every single time he checked his email. Not so.

First the fact that Google and Yahoo each have privacy policies that state they will comply with *lawful* subpoenas, ER65, ER56, merely begs the question of whether these subpoenas are in fact lawful. Moreover, the information Chevron seeks here goes far beyond the minimal intrusions at issue in the cases it cites. In *People v. Stipo*, 124 Cal. Rptr. 3d 688, 692 (Cal. Ct. App. 2011), law enforcement sought merely the name of a single website visited by a criminal defendant. Here, Chevron seeks the daily locations over several years of dozens of people who have been accused of no crime. *See* AOB at 52; *United States v. Jones*, 132 S. Ct. 945, 954 (2012) (Sotomayor, J., concurring).

Finally, Chevron attempts to distinguish *Planned Parenthood Golden Gate v. Superior Court*, by noting that court found a privacy interest based on "specific evidence that" disclosure could have resulted in "unique and very real threats not just to . . . privacy" but also to individuals' "safety and well-being." 99 Cal. Rptr. 2d 627, 639 (Cal. Ct. App. 2000). But that is *precisely* what the Does' unrebutted declarations demonstrate. *See, e.g.* ER106 ("my concern [is] that information about my whereabouts could fall into the hands of the wrong people, jeopardizing my physical safety and that of my family"); *see also* ER103, ER137, ER134.

**E.    Appellants Have Standing to Represent the Interests of Those Non-Parties Targeted by Chevron Who Lack the Wherewithal to Secure Counsel.**

The parties agree that to establish third-party standing: a litigant must show (1) a "hindrance to the third party's ability to protect his . . . own interests" and (2) that there is a "close relationship" between the litigant and the third parties whom the litigant will stand for. *See Coalition of Clergy, Lawyers & Professors v. Bush*, 310 F.3d 1153, 1163 (9th Cir. 2002); *see also Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004). Chevron, however, ignores the *undisputed* evidence on record regarding both prongs of the test.

First, the "hindrance" is clear: a number of the email accounts targeted by Chevron no longer function, so their owners could not have received notice via the only method by which it was sent. ER52-53. This refutes Chevron's claim that each of the unrepresented non-parties have "chosen not to object to Chevron's requests." ER81; AOB at 58-59. Given the international nature of the underlying dispute, there is also a real concern that the individuals affected may be abroad or may not speak English, the language of the notice. Chevron also ignores the fact that one of the non-party Appellants – the owner of hueyzactlan@gmail.com – was only able to join the Appellants' motion to quash during the pendency of that motion. ER52; AOB at 58. The experience of that Appellant indicates the difficulty

28

the non-parties faced in finding counsel and therefore the "hindrance" to their ability to protect their interests.

Second, Appellants have shown a sufficient "common interest" to give rise to third-party standing. In *Campbell v. Louisiana*, 523 U.S. 392, 398 (1998), the Supreme Court addressed the claim of a defendant on behalf of grand jurors he had never met and could never meet. The Court held because the third-parties "share[d] with him a common interest" in protecting the constitutional interest at stake, the defendant had shown the requisite "close relationship" with the absent parties. *Id*.

Chevron's own briefing makes clear that the interests of the unrepresented targets and of Appellants are identical. Chevron alleges that each of its targets participated in a single campaign of expressive activity aimed at holding Chevron accountable for the destruction of portions of the Ecuadorian Amazon. Chevron Br. at 14, 33; ER73. Indeed it alleges that they were all part of the same "fraud." *Id*. Because Chevron seeks the same categories of information from each target, and because they are being targeted for identical reasons, Appellants' First Amendment interests are the same as those of the unrepresented non-parties.

Moreover, the First Amendment issues here present "unique standing considerations" that tilt dramatically toward a finding of standing. *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) (the First Amendment provides

an "exception to the usual rules governing standing")). Chevron's subpoenas clearly affect speech – they were issued to identify and track the location of those who participated in the Ecuador campaign: expressive activity that Chevron strongly dislikes. ER31. Appellants therefore have standing to protect the identical interests of the absent non-parties.

## IV. CONCLUSION

For the reasons stated above as well as in Appellants' Opening Brief, Appellants respectfully request that this Court reverse the order of the district court to the extent it ordered discovery, and quash the subpoenas in their entirety.

Dated:  January 6, 2014                    Respectfully submitted,

By:  /s/ Cindy Cohn
      Cindy Cohn
      Nathan Cardozo
      ELECTRONIC FRONTIER FOUNDATION
      815 Eddy Street
      San Francisco, CA 94109
      Telephone:  (415) 436-9333

      Richard Herz
      Michelle Harrison
      Marco Simons
      EARTHRIGHTS INTERNATIONAL
      1612 K Street, N.W., Suite 401
      Washington, DC 20006
      Telephone:  (202) 466-5188

      *Counsel for Non-Party*
      *Movants-Appellants*

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS
PURSUANT TO FED. R. APP. P. 32(a)(7)(C)**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify as follows:

1.      Appellees' Reply Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,827 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 for Mac, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

Dated:  January 6, 2014          By:  /s/ Cindy Cohn
                                              Cindy Cohn

                                      *Counsel for Non-Party
                                      Movants-Appellants*

31

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 6, 2014.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  January 6, 2014                     By:  /s/ Cindy Cohn
                                                 Cindy Cohn

                                            *Counsel for Non-Party*
                                            *Movants-Appellants*